943 A.2d 873 (2008)
399 N.J. Super. 146
MOPER TRANSPORTATION, INC., Manuel Flores and Great American Assurance Company, Plaintiffs-Respondents
v.
NORBET TRUCKING CORP. and The Insurance Company of the State of Pennsylvania, XYZ Corp. (said name being fictitious and unknown), Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 2007.
Decided March 27, 2008.
Francis X. Garrity, Montclair, argued the cause for appellants (Garrity, Graham, Murphy, Garofalo & Flinn, attorneys; Mr. Garrity and Frank R. Cinquina, on the brief).
Vanessa L. Koppel, Shrewsbury, argued the cause for respondents (Schoenfeld Moreland, attorneys; Ms. Koppel, on the brief).
*874 Before Judges STERN, A.A. RODRÍGUEZ and COLLESTER.[1]
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendants, Norbet Trucking Corporation and the Insurance Company of the State of Pennsylvania (ICSOP), appeal from a final judgment based on an order of October 4, 2006, and orders of June 20, 2006, entered in favor of plaintiffs, Great American Assurance Company, Moper Transportation Inc. and Manuel Flores, declaring that ICSOP must provide coverage in the case of Colon v. Moper, and requiring reimbursement to Great American by ICSOP for counsel fees and costs in that matter and this declaratory judgment action. The court had ruled by order of June 20, 2006, that Flores, Moper's sole shareholder and president, was using "the subject-matter tractor to return home after leaving Norbet Trucking's facility after completing his dispatch duties . . . in the course and scope of the commercial business of Norbet Trucking as that term is defined in the respective policies and applicable case law," that "the non-trucking [or business use] exclusion contained in the Great American non-trucking liability policy is applicable"[2] so that Great American did not provide coverage for Flores' accident with David Colon in January 2004, and that ICSOP "must provide primary coverage" for injuries and damages resulting from the accident.
Moper had entered into a Transportation Service Agreement (TSA) with Norbet, and ICSOP issued a commercial trucker's liability policy to Norbet while Great American issued a "non-trucking liability" policy to Moper. Due to the weather, Flores missed his normal ride home from work, and was driving the tractor from its New Jersey garage to his New York home when the accident occurred on the West Shore Expressway on Staten Island, New York.
Defendants argue New York law should apply, Great American's "business use exclusion" is invalid thereunder, and, in any event, the tractor was not being used for business purposes. Thus, defendants assert that Great American provides coverage. They further contend that Great American, as an insurer, cannot collect counsel fees under Rule 4:42-9(a)(6) even if we affirm the judgment as to coverage, but that if a carrier can so collect, ICSOP is entitled to its fees and costs if we reverse the coverage determination. We affirm the judgment.

I.
As already stated, this declaratory judgment stems from a motor vehicle accident that occurred on January 27, 2004, on the West Shore Expressway in Staten Island when vehicles driven by Flores and David Colon were involved in an accident. The vehicle driven by Flores was a 1998 Kenilworth tractor ("the tractor") registered in New Jersey. Colon was a resident of New York. He was driving a car registered in New York and owned by Kate Agugliaro, a resident of New York. Flores was also a resident of New York.
The tractor driven by Flores was owned by Moper, a New Jersey corporation which has its principal place of business in Jersey *875 City.[3] Flores is the sole shareholder of Moper. Moper owned only one tractor and Flores was the sole driver.
Prior to the date of the accident Moper leased the tractor to Norbet pursuant to the TSA dated December 1, 2003. Pursuant to their agreement, Moper performed "transportation services" for Norbet as a "contractor" while using its tractor. Norbet is a New Jersey trucking company that transports goods in interstate commerce.
In accordance with federal regulations, Norbet, "as a freight forwarder and/or common carrier" was required to obtain "public liability, property damage, and cargo insurance." The TSA requires Moper to provide "non-trucking liability, and/or bobtail and deadhead insurance coverage"[4] in an amount no less than $1,000,000, and furnish a certificate of such insurance to Norbet. The TSA states that "[t]he parties to this Agreement agree that the Agreement, and any and all disputes or interpretations arising under it, shall be governed by the laws of the state of New Jersey except to the extent pre-empted by applicable federal law."[5]
Pursuant to the TSA, Norbet obtained Trucking Liability Insurance from ICSOP running from December 15, 2003 to December 15, 2004. Moper purchased a "Non-Trucking Liability" policy from Great American for the period from November 19, 2003 to November 19, 2004. The Great American policy contained an exclusion for any "trucking or business use."[6]
Sometime between 1:00 and 2:00 a.m. on the day of the accident, Flores arrived at the Norbet Terminal where he turned his "tractor on" and attached the "flatbed" assigned by Norbet's dispatcher to his tractor. Cargo was loaded, and Flores proceeded to make several interstate deliveries. He returned to the Norbet Terminal around 8:00 p.m.
Normally Flores would have received a ride home from a co-worker, but his co-worker was unable to give him a ride on that day because he had left due to the heavy snowfall. As a result, Flores drove the tractor home instead. On the way home, at approximately 10:15 p.m., he was traveling on the West Shore Expressway when he saw the Colon car, a Toyota, "sliding" and "spinning or going around." According to Flores, the car driven by Colon slid backwards into his rear axle, causing the accident. Flores testified that no damage was caused to his trailer, but he observed damage to the bumper and trunk of Colon's car.
Colon filed suit against Flores, Moper and Norbet in the Supreme Court of New York. Great American initially declined to defend or indemnify, and disclaimed any *876 responsibility to defend Moper and Flores under its non-trucking liability policy "because of the trucking use of the vehicle at the time of the loss." Specifically, Great American concluded that the accident occurred while Flores was "under dispatch for Norbet Trucking Corporation," and therefore the accident arose out of a "trucking use" not covered by the policy. Great American took the position that because Flores was operating the tractor within the scope of Norbet's business, ICSOP was "obligated to provide defense and indemnification to [Moper and Flores]." ICSOP also declined to defend Flores and Moper because Flores "was not working for [its] insured at the time of [the] accident." ICSOP took the position that Great American was required to defend Moper and Flores under the "non-trucking policy" issued to Moper.
Great American ultimately undertook the defense of Moper and Flores in Colon's New York action. In this declaratory action Moper, Flores and Great American sought coverage and counsel fees for both defending the Colon action and the declaratory judgment action. Defendants, including ICSOP, assert that the Great American policy provides coverage because New York's "deemer" statute requires that its policy "must be reformed to conform to New York law," and that because "`the non-trucking use' or `business use' exclusion in the policy is invalid, [when reformed to conform to New York law] . . . coverage under the policy extends to Flores, Moper and Norbet as to the Colon loss."

II.
The Law Division determined that, because New Jersey had more "significant connections and interest than New York . . . New Jersey law should apply." The trial court considered the following factors in making its finding:
One. Both lessor/operator (Moper Transportation/Flores) and lessee/motor carrier (Norbet Trucking) are incorporated in and have their principal place of business in New Jersey.
Two. The nontrucking policy with its business exclusion provision issued by Great American to lessor/operator Moper/Flores was written in New Jersey in compliance with New Jersey statutory, regulatory, and other legal requirements.
Three. Likewise, the trucking policy issued by [ICSOP] was written in New Jersey in compliance with New Jersey's statutory, regulatory, and other legal requirements.
Four. At the time of the accident on January 27th, 2004, both policies were in effect.
Five. New Jersey has a significant interest in the enforcement of its insurance laws and in the interpretation of New Jersey insurance policies in accordance with New Jersey law.
Six. New York's only interest in this matter derives from the fact that the injured party, Colon, is a New York resident and the accident occurred in New York. New York's only interest, therefore, is insuring, if possible, that the quantum of insurance coverage available to Colon would be comparable to the coverage required if the policy had been written under New York law.
. . . .
Seven. It cannot be argued that New York can legitimately claim that New Jersey's coverage requirements must be the same as New York's coverage requirements. Indeed, ICSOP [ ] does not so argue. However, ICSOP is contending that New York has a significant interest in the particular language *877 and/or phraseology used in New Jersey policies.
ICSOP is contending that the nontrucking policy issued by Great American should be deemed void as against public policy simply because it failed to contain particular language and/or phraseology which New York requires in policies written in New York. This Court rejects [ICSOP's] contention. No legal authority has been offered to support it and it does not square with practical realties.
The judge further concluded that Flores was "returning home" from Norbet's terminal "after a day of delivering cargo for Norbet," "that the use was occasioned by a snow emergency" and that Norbet did not object to such use. Accordingly, the judge concluded that "the tractor was being used in furtherance of Norbet's trucking business interest," and its carrier was obligated to cover the accident.
As summarily noted above, ICSOP[7] argues that "pursuant to relevant New York statutes governing mandatory insurance on motor vehicles by insureds doing business in New York," the trial court erred in failing to apply New York law, which ICSOP maintains would have required Great American to provide coverage to Flores and Moper "by reason of New York deemer statute." It argues that "traditional standards of choice of law do not apply" because, as a carrier, "Great American had agreed to be bound by New York financial responsibility laws when it undertook to do business in New York." ICSOP further contends that, as a result of the "deemer statute," that Great American policy must be "reformed" to void the "trucking" or "business use" exclusion with respect to the Colon accident. ICSOP independently contends that, even if the "deemer statute is not dispositive of the choice of law issue," "New York has the most significant contacts with the issues" in this case, and therefore the business use exclusion under Great American's policy covering the tractor is unenforceable.
Plaintiffs argue that New Jersey has a far greater interest in this case than New York, noting among other things that Moper and Norbet are both New Jersey corporations, the lease agreement was signed in New Jersey, and both insurance policies were written in New Jersey. According to plaintiffs the only connection this case has to New York is the fact that the accident occurred there and Colon is a resident of New York. Plaintiffs also argue that "[u]nder the choice of law doctrines of both New Jersey and New York, it is well settled that the law of the state where the insurance contract was formed is the law which governs an action involving the rights and duties to parties of that insurance contract." Great American asserts that ICSOP's interest in having New York law applied to this case lies in the fact that New York law does not honor business use exclusions like the one contained in Great American's insurance policy with Moper. Plaintiffs further contend that the public policy of New York, and its "deemer" statute, will not be offended by applying New Jersey law, as Colon would be compensated under the ICSOP policy if it is found that Flores negligently operated his tractor, thereby causing the accident.

III.
Choice-of-law determinations are made in accordance with the law of the forum state. New Jersey now applies a "governmental interest" test in a case like this, Fu v. Fu, 160 N.J. 108, 118, 733 A.2d 1133 (1999), and the "first prong" of that analysis requires a determination that an *878 actual conflict exists between the laws of New York and New Jersey, and is to be decided "on an issue-by-issue basis," Rowe v. Hoffman-LaRoche Inc., 189 N.J. 615, 621, 917 A.2d 767 (2007); Fu, supra, 160 N.J. at 117-18, 733 A.2d 1133.
Because both states have "deemer" statutes,[8] and the issue of coverage may turn on resolution of the factual dispute as to whether the accident occurred during a "trucking" or "non-trucking" event, we invited the parties to file supplementary briefs addressing both New York and New Jersey law and whether there is an "actual conflict" as to the meaning of "business use," and how any "factual dispute as to whether the Colon-Flores accident on Staten Island occurred incident to Norbet's trucking business" is to be resolved. Stated differently, we are concerned if "an actual conflict" results only if the accident occurred during use in Norbet's business but not otherwise.
The parties seem to agree that there is no conflict in terms of what constitutes a "business" or "non-business" purpose and how that fact is to be determined. Moreover, in the original briefs, the parties seem to premise their arguments of an actual conflict on defendants' assertion that "the Great American business use exclusion is invalid under New York Law." See, e.g., Royal Indem. Co., supra, 92 N.Y.2d 653, 684 N.Y.S.2d 470, 707 N.E.2d 425; see also Connecticut Indem. Co. v. Podeszwa, 392 N.J.Super. 480, 496-97, 921 A.2d 458 (App.Div.2007). Plaintiffs do not seem to dispute the conflict or that a different result would occur under New York and New Jersey law if the tractor was being used for a business purpose. They merely seem to reject defendants' contention that no conflicts of law analysis is necessary because of New York's "deemer" statute:
The defendants attempt to confuse the issue by arguing that New York's McKinney's Insurance Law § 5107 is analogous to New Jersey's Deemer Statute, and therefore traditional standards for choice of law do not apply. The defendants argue that these deemer statutes have the effect of eliminating choice of law issues, in that they effectively "reform" out of state policies to conform to the state's mandatory insurance requirements. However, the defendants point to no case or statute that so holds. In fact, it is clear that this is not the case. In New Jersey, case law has held that the stated legislative purpose of the so-called Deemer Statutes is to provide insurance (PIP coverage) for any New Jersey resident who is not required to maintain such coverage and "who is not otherwise eligible for such benefits." Government Employees Ins. Co. v. Allstate Insurance Co., 358 N.J.Super. 555, 561, 818 A.2d 474 (App.Div.2003). Therefore it is clear that the Deemer Statutes apply to those instances where there is no available insurance coverage to an aggrieved party. Here, there is clearly ample insurance coverage available to Mr. Flores and Moper Transportation; the issue is not lack of coverage, but rather which policy shall provide coverage. The defendants' attempt to utilize the Deemer Statute to, in effect, invalidate prior choice of law reasoning is baseless and such an argument should be given no credence here.
Moreover, New Jersey appears to permit the "business-use" exclusion used by Great American "so long as the truck is covered by an additional policy providing coverage for business use." Connecticut Indemn. *879 Co., supra, 392 N.J.Super. at 482, 921 A.2d 458.
Accordingly, because the record supports the trial court's opinion that a business use was involved, see Planet Ins. Co. v. Anglo American Ins. Co., 312 N.J.Super. 233, 240-41, 711 A.2d 899 (App.Div. 1998)an issue we must decide under New Jersey law in the absence of an actual conflict relating to the determination of that issue, we proceed to consider the issue presented on the basis of an actual conflict with respect to the validity or enforceability of the "non-trucking" or "business use" exclusion in the Great American policy. As to that subject, there is an actual conflict. We add, however, that we are cited to no authority suggesting that a choice-of-law analysis becomes irrelevant merely because the state in which the accident occurs has a "deemer" statute that would apply because the accident occurred in that state. Craig and Pomeroy suggest that the New Jersey "deemer" statute would trump any choice-of-law analysis with respect to coverage under a policy issued out-of-state on an out-state vehicle involved in an accident and litigation here. Craig & Pomeroy, New Jersey Automobile Insurance Law (Gann 2008), § 3.1-3.2. It may well be that New York law is similar, which would point to its governmental interest under a choice-of-law analysis and application of that principle if New York law applies.

IV.
"The second prong of the governmental-interest analysis requires the Court to determine which state has the most significant relationship to the occurrence and the parties," Fu, supra, 160 N.J. at 119, 733 A.2d 1133, "or most significant connections with the issues raised or the parties and the transaction[,]" Lonza, Inc. v. The Hartford Acc. and Indem. Co., 359 N.J.Super. 333, 342, 820 A.2d 53 (App.Div.2003) (citing Veazey v. Doremus, 103 N.J. 244, 247-49, 510 A.2d 1187 (1986)); see also Rowe, supra, 189 N.J. at 621, 917 A.2d 767.
It is not disputed that both Moper and Norbet are New Jersey corporations with their principal places of business in New Jersey. It is also undisputed that the TSA was "formed and executed in New Jersey," and the TSA specifically requires that any issue arising under it be decided under New Jersey law. In addition, the tractor driven by Flores during the accident was registered in New Jersey, and both policies were issued here to New Jersey entities.
However, the accident occurred in New York, and the injured plaintiff lived there, sustained his losses there, was treated there, and sought his recovery there. The other driver in the accident, Flores, also lived in New York, and he would be subject to enforcement there of any judgment against him not covered by insurance. Moreover, New York's statutory law and public policy preclude enforcement of business use exclusions in "bobtail" or "non-trucking" policies. See Royal Indemn. Co., supra, 707 N.E.2d at 428 (finding that a business use exclusion in a non-trucking policy is "void as against public policy" and reading the policy "as if the exclusion did not exist").
New York might well have the paramount interest in assuring that Colon is compensated for any losses he suffered, and, therefore, with respect to coverage. As stated in Fu:
In personal injury cases, "the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law." When both conduct and injury occur in a single jurisdiction, with only "rare exceptions, the local *880 law of the state where conduct and injury occurred will be applied" to determine an actor's liability. That is so because "a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there."
[Fu, supra, 160 N.J. at 125-26, 733 A.2d 1133 (citations omitted).][9]
However, we conclude that our choice-of-law principles point to the law of New Jersey in this declaratory judgment action where the issue is which carrier provides coverage. The New York resident has settled the personal injury action and has been fully compensated. In any event, this is not a personal injury action in which he is a party. As a result, as between the carriers in this action dealing with loss allocation under policies issued to New Jersey insureds under a contract expressly governed by New Jersey law, we do not believe New York has the greater governmental interest. See, e.g., Fu, supra, 160 N.J. 108, 733 A.2d 1133; Erny v. Merola, 171 N.J. 86, 792 A.2d 1208 (2002); Dolan v. Sea Transfer Corp., 398 N.J.Super. 313, 942 A.2d 29 (App.Div.2008); Restatement of the Law (Second), Conflict of Laws 2d § 188.
Accordingly, we affirm the judgment of the Law Division and uphold the award of fees for the declaratory judgment against defendant ICSOP because it did not embody a first party claim, ICSOP declined to defend the Colon action against Great American's insureds, and there is no dispute about the quantum of fees if sustainable under Rule 4:42-9(a)(6).[10] This was not a direct action by an insured against its carrier but a declaratory judgment premised on ICSOP's failure to defend a liability action commenced by a third party. See Tooker v. Hartford Accident & Indem. Co., 136 N.J.Super. 572, 347 A.2d 371 (App.Div.1975), certif. denied, 70 N.J. 137, 358 A.2d 184 (1976) ("the rule applies to all successful claimants, including an excess or secondary carrier which successfully prosecutes a coverage action against the primary carrier when the latter has wrongfully refused to defend its assured"); see, generally, Shore Orthopaedic Group, LLC v. Equitable Life Assur. Soc'y of the United States, 397 N.J.Super. 614, 938 A.2d 962 (App.Div.2008).

V.
The judgment is affirmed.
NOTES
[1] Judge Collester did not participate in the argument, but with the consent of the parties, participated in the disposition of the appeal.
[2] As pointed out by defendants, the exclusion in the Great American policy "is referred to interchangeably as the `non-trucking use' and `business use' exclusion."
[3] It is undisputed that Norbet's principal place of business is South Plainfield and Moper is in Jersey City.
[4] "A bobtail is the popular term for a tractor (cab) without an attached trailer. Since a trucker who is `bobtailing' is generally not using the vehicle for trucking purposes, non-trucking-use insurance is often called bobtail insurance." Royal Indem. Co. v. Providence Wash. Ins. Co., 92 N.Y.2d 653, 684 N.Y.S.2d 470, 707 N.E.2d 425, 426 n. 1 (1998).
[5] The carriers are not parties to the TSA agreement and plaintiffs do not argue that this provision by itself requires that New Jersey law must be utilized to govern the coverage dispute before us.
[6] The policy provides for "liability for non-trucking use." The exclusions include "liability arising out of any accident which occurs while the covered auto is being used in the business of anyone to whom the covered auto is leased, rented or loaned. . . ." An "auto means any land motor vehicle, trailer or semi-trailer designed for travel on public roads. . . ."
[7] Norbet is also an appellant, but we refer to ICSOP because it is the carrier.
[8] See N.J.S.A. 17:28-1.4; N.Y. Ins. Law § 5107 (McKinney 2007); see also Craig & Pomeroy, New Jersey Auto Insurance Law (Gann 2008), § 3.1-3.5.
[9] Fu dealt with a suit by the passenger of a car rented in New Jersey against the rental agency following "an automobile accident in New York involving only New Jersey residents." Fu, supra, 160 N.J. at 113, 733 A.2d 1133. The Court held that New York's vicarious law applied.
[10] ICSOP "concedes . . . that [it] was obligated to reimburse Great American for the costs of defense in the Colon action" if we affirm the judgment on coverage. However, it contends the Rule does not apply "to an insurance company which prevails after commencing a declaratory judgment action against its insured and establishes that coverage does not extend." However, the declaratory judgment action obtained coverage for Moper and Flores in circumstances involving a disclaimer by ICSOP and Great American's assertion that its exclusion was valid. Accordingly, we find no abuse of discretion in the award of counsel fees. See Messec v. USF & G Ins. Co., 369 N.J.Super. 61, 64, 848 A.2d 36 (App.Div.), certif. denied, 181 N.J. 287, 854 A.2d 921 (2004).